UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TIMOTHY E. TYREE,**

 Petitioner,

 v.              Case No. 16-CV-1623

**SCOTT ECKSTEIN,**

 Respondent.

---

**DECISION AND ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

---

  Timothy E. Tyree, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tyree was convicted of first degree reckless homicide with use of a dangerous weapon as a party to the crime and was sentenced to forty years, consisting of twenty-seven years of initial confinement followed by thirteen years of extended supervision. (Habeas Pet. at 2, Docket # 1.) Tyree alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

  Tyree challenges his judgment of conviction for first degree reckless homicide with use of a dangerous weapon as a party to the crime in Milwaukee County Circuit Court. (Answer to Habeas Petition ("Answer"), Ex. A, Docket #10-1 at 1–2.) The conviction stems from the shooting death of Eddie Ellis shortly before 11:30 p.m. on January 4, 2012. (*State v. Tyree*, Appeal No. 2013AP2789 (Wis. Ct. App. May 12, 2015), Answer, Ex. D, Docket # 10-4 at 2.) Detective James Hensley interviewed Mickolous Turner at the crime scene. (*Id.*)

Turner stated that he and Ellis were near an alley next to Ellis' apartment building and were trying to defuse a fight among a group of women when he heard gunshots. (*Id.*) Turner saw two African American men standing near a garbage bin, and one of the men extended his arm and pointed it at Turner and Ellis. (*Id.*) Turner saw sparks coming from the end of the man's arm and heard gunshots. He turned and ran away, but heard Ellis yell and saw him fall to the ground. (*Id.*)

According to Detective Hensley's report, Turner described the shooter as an African American man who was approximately six feet tall, had a thin to medium build, and weighed around 160 pounds. (*Id.*) Turner stated the shooter wore a black hooded sweatshirt with the hood up, black pants, and carried a handgun. (*Id.*) Turner told Detective Hensley that he was not sure if he could identify the shooter because of the distance and because the shooter's hood was up, but stated that he would try if he had the opportunity to do so. (*Id.*)

Turner attended a line-up on January 8, 2012—four days after the shooting. (*Id.* at 3.) The line-up consisted of six African American men, ranging in ages from eighteen to twenty-one, ranging in height between 5'11" to 6'3", and weighing from 160 to 230 pounds. (*Id.*) All the men wore the same jail clothing, along with a black baseball cap backwards, a covering on their right wrists, and they had some degree of facial hair. (*Id.*) Tyree was number five in the line-up, which was his chosen position. (*Id.*)

At trial, Detective James Hutchinson testified that during the line-up, Turner had a "Lineup Identification Form" with him to fill in with the words "Yes" or "No" next to the numbers designating each person in the line-up. (*Id.*) Turner circled "No" next to numbers

one, two, three, four, and six, but he left the choices next to number five unmarked. (*Id.*) When questioned by Detective Hutchinson as to why he left number five unmarked, Turner responded that he wanted to identify number five as the shooter, but was hesitant to do so because he did not know what the shooter's face looked like. (*Id.*) According to Detective Hutchinson, Turner went on to explain that number five resembled the shooter in "body shape, body size, height, physical buil[d] and posture . . . but he just could not identify the face." (*Id.*) Turner told Detective Hutchinson that he could not identify the face because he "did not get a good look. It was night," but went on to circle "Yes" next to number five. (*Id.*)

When questioned by defense counsel as to how he could identify person number five, Turner responded: "Because any other person in the lineup didn't fit the description of what I seen." (*Id.*) Turner indicated that upon hearing the first shots fired, he froze in place for ten to fifteen seconds, which is when he made his observations. (*Id.*) The jury found Tyree guilty. Tyree filed a postconviction motion arguing that: (1) his trial counsel was ineffective for failing to seek suppression of Turner's identification of Tyree in the police line-up and (2) the trial court erroneously exercised its discretion when it sentenced him. (*Id.* at 4.) The court of appeals rejected these arguments and affirmed the judgment of conviction on May 12, 2015. (*Id.* at 1–9.) The Wisconsin Supreme Court denied Tyree's petition for review on September 9, 2015. (Answer, Ex. F, Docket # 10-6.) Tyree filed a timely petition for writ of habeas corpus in this court on December 7, 2016. (Docket # 1.)

# STANDARD OF REVIEW

Tyree's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

**ANALYSIS**

Tyree raises a single ground for relief in his habeas petition. He argues the court of appeals erred in finding his trial counsel did not render ineffective assistance of counsel by failing to request a pretrial hearing regarding the police line-up or objecting to its admissibility at trial. (Docket # 1 at 6–7.) The respondent argues Tyree procedurally defaulted his claim because the Wisconsin Court of Appeals denied his ineffective assistance of counsel claim based on an adequate and independent state procedural rule, namely, Tyree failed to adequately develop his argument. (Resp. Br. at 8–10, Docket # 15.)

5

Alternatively, the respondent argues Tyree's claim fails on the merits. I will address each argument in turn.

  1. *Procedural Default*

Again, the respondent argues Tyree procedurally defaulted his claim because the court of appeals denied his ineffective assistance of counsel claim based on an adequate and independent state procedural rule. A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* (internal quotation and citation omitted). But this doctrine will not bar habeas review unless the state court actually relied on the procedural default as an independent basis for its decision. Thus, "if the decision of the last state court to which the petitioner presented his federal claims fairly appears to rest primarily on the resolution of those claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims." *Id.* A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine "curtails reconsideration of the federal issue on federal habeas." *Id.* (internal quotation and citation omitted).

Tyree argued before the court of appeals that his trial counsel was ineffective for failing to seek suppression of Turner's identification of Tyree in the police line-up and for not objecting to trial testimony and other evidence related to the line-up identification. While the court of appeals did find that Tyree's arguments as to both issues were undeveloped and declined to "consider the argument[s] further," this determination was made only after the court of appeals did consider the merits of Tyree's arguments. (Docket # 10-4 at 6–7.) It does not appear that the Wisconsin Court of Appeals' merits determination was merely an alternative holding. The court specifically found that Tyree's motion to suppress the line-up identification or objection to trial testimony regarding the same would not have been successful. Accordingly, the court of appeals found that Tyree's counsel was not ineffective. (*Id.* at 8.) Thus, I do not find Tyree procedurally defaulted his ineffective assistance of counsel claim and will consider the claim on the merits.

2.  *Ineffective Assistance of Counsel*

Tyree argues his trial counsel was ineffective for failing to challenge the line-up identification in a pretrial motion and for failing to object to the testimony of Detective Hutchinson regarding the line-up identification. (Petitioner's Br. at 6, Docket # 2.)

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Tyree must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not

7

be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

As an initial matter, beyond making the conclusory argument that he received ineffective assistance of counsel and the "Court of Appeals and the Supreme Court failed in applying the appropriate law in this matter," (Docket # 2 at 8), Tyree fails to develop how the court of appeals' decision was contrary to, or unreasonably applied, *Strickland*.

The court of appeals correctly cited the *Strickland* standard for ineffective assistance of counsel and then cited *State v. Toliver*, 187 Wis. 2d 346 (Ct. App. 1994) for the proposition that counsel is not ineffective for failing to bring a motion that would not have been granted. (Docket # 10-4 at 4.) The court of appeals then considered whether challenging Turner's line-up identification would have been successful. In so doing, the court cited *Powell v. State*, 86 Wis. 2d 512 (1978), which articulates a two-step due process inquiry consistent with Supreme Court law in *Neil v. Biggers*, 409 U.S. 188 (1972). *See Gregory-Bey v. Hanks*, 332 F.3d 1036, 1044 (7th Cir. 2003).

Tyree has not shown that the court of appeals incorrectly identified the controlling legal standards; thus, the question before me is whether the court of appeals reasonably applied those principles to the facts of Tyree's case or unreasonably determined the facts in light of the evidence presented. *See Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). Tyree argued before the court of appeals that the individuals in the line-up were wearing different clothing from what Turner reported the shooter was wearing during the night in question. (Docket # 10-4 at 6.) The court of appeals rejected this undeveloped argument, finding that the law does not require the police to dress the persons in the line-up in clothing the witness observed the target in. (*Id.*)

Tyree has not shown the court of appeals' determination that the identification procedure was not unduly suggestive contravenes Supreme Court law. The "danger to be avoided in identification procedures is that of orchestrating the procedure so that one particular suspect stands out from the others and the procedure implicitly suggests to the witness that 'this is the man.'" *Gregory-Bey*, 375 F.3d 1045. In this case, the line-up consisted of six African American men, ranging in ages from eighteen to twenty-one, ranging in height between 5'11" to 6'3", and weighing from 160 to 230 pounds. (Docket # 10-4 at 3.) All the men wore the same jail clothing, along with a black baseball cap backwards, a covering on their right wrists, and they had some degree of facial hair. (*Id.*) Tyree was number five in the line-up, which was his chosen position. (*Id.*) Tyree does not argue anything about this line-up was unduly suggestive.

Rather, Tyree again argues that Turner's identification of Tyree as the shooter was insufficient because Turner only "kind of" identified Tyree. (Petitioner's Br. at 8.) But, as the court of appeals found, what Tyree takes issue with is not the suggestiveness of the line-up, but the reliability of Turner's identification, which is a question for the jury. (Docket # 10-4 at 7.) Turner took the stand and Tyree's counsel had the opportunity to extensively cross-examine Turner as to his identification. (Answer, Ex. H, Oct. 2, 2012 Jury Trial Transcript, Docket # 10-8 at 60–76.) Turner testified that he could not identify the shooter by his face and it was dark at the time. (*Id.* 61–62.) Thus, the limitations to Turner's identification were put before the jury. The court of appeals found that a motion to suppress or an objection to trial testimony or evidence related to the line-up would have been

unsuccessful, thus Tyree's counsel was not ineffective for failing to challenge the line-up. Tyree has not demonstrated that the court of appeals' finding contravenes *Strickland*. For these reasons, Tyree is not entitled to habeas relief.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Tyree is not entitled to habeas relief. Thus, I will deny Tyree a certificate of appealability. Of course, Tyree retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of December, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge